We'll hear argument first in the number 22-2834. Greenhouse v. Meddaugh. Mr. Richter. Thank you, Your Honor. Can they please depart? On October 29, 2020, Leon Greyhouse experienced a medical emergency. He woke up with a bloody nose, he was dizzy, and he was numb on the right side of his body. He needed medical care, not punishment, and the first nurse to see him, the first medical professional to see him, agreed and sent him to a separate medical facility. He did not, however, get treatment. He got punishment. And when it came to his disciplinary hearing, and when it came for his opportunity to present this defense that this was a medical emergency rather than him being intoxicated on some substance, they've never decided what it was, whether it was alcohol or drugs or any more detail than that. When it came time for that hearing, he was denied the opportunity to present a defense and was convicted on evidence that falls beneath even the low standard applicable to prison disciplinary hearings. You say that about the opportunity to present a defense. So one of those is that you say that the hearing officer interrupted him when he was trying to ask questions of the nurse. Is there some question that he wanted to ask that he didn't have the opportunity to ask that you think would have made a difference? Yes. So what is that question? Well, it's actually a collection of questions. It's a line of questions that I think I should mention. You don't get to question people directly in these hearings. What happens is, that you propose questions to the hearing officer who then filters them through their own lens and then interposes the question to the witness. So it's not like a courtroom, it's a more mediated situation. Yeah, but do you think that kind of a system is always unconstitutional, or it's just that here you think it was too filtered? Always? No. No. So if the hearing officer had not reframed it too much, it would be a permissible method. So I guess I'm asking, what are the questions that he directed to the nurse that he didn't get an answer to that would have made a difference in the outcome of the hearing? Two sets of questions. One is, what's your basis for believing I'm intoxicated? Let's take alcohol for an example. If somebody drank enough hand sanitizer so that they had a bloody nose and they were incoherent, I would imagine, and you'd see in the medical records, which by the way, you don't, that there'd be a comment about smelling massively like alcohol. That's the kind of question. Okay, you think I'm intoxicated. How did you get there? What specifically makes you think I'm intoxicated? This was on a 12b6 motion? Yes. The other one. So how, you know, we're talking about what questions would have been asked, et cetera, et cetera. I mean, how does it play in that this was on a 12b6 motion and we're supposed to be focusing just on the facts alleged in the complaint? Well, I agree, Your Honor. I mean, we have a very limited record here. This is a 12b6 motion. We did put in the complaint the fact that he wasn't allowed to ask for the basis of the intoxication, but I agree. I think this is a summary judgment question, not a 12b6 question. I mean, we just said, you know, I mean, you just said that it's not that it's always impermissible for the hearing officer to reframe the questions. So there has to be some kind of injury to him, some kind of question he was not able to ask. I mean, did you allege that in the complaint? I mean, wouldn't it have to be alleged that he didn't get an answer to some kind of a question as opposed to just saying the hearing officer reframed the question? Because you just said that that is not necessarily the case. I agree, and it is. We specifically put in the complaint that he wanted to question about the underlying basis, the methodology that this nurse used to get to this conclusory conclusion that he was intoxicated. On that point, I mean, didn't the question get asked in the hearing, and the nurse said, based on my experience observing patients in the infirmary, like I concluded that he was intoxicated? Observing what? I mean, really, specifically, they don't even distinguish between alcohol and some other intoxicant. Was he swearing his speech? Did he smell like a brewery? Some sort of concrete fact. And this is accepted as true for the purpose of this motion. My client wasn't intoxicated. This was a medical event. And the first nurse, who, by the way, he wanted to call, who examined him first and was not allowed to present testimony, that's another factor that goes into this disciplinary hearing and why he wasn't allowed to present an adequate defense. The medical records that would show that he's on drugs that give him bloody nose, that do have symptoms of things like dizziness, he wasn't allowed to have those medical records, which, by the way, is always the responsibility of the hearing officer to provide. And there were multiple days of hearings. There's two days of hearings. So your answer to the District Court that says that you don't allege that it was the hearing officer who denied him the records is that it's just, it's always the hearing officer who is responsible for that. Yes. Is that right? Yeah. The hearing officer controls the courtroom just like a judge, but in another way also The records would have shown was that he was on these medications, but wasn't, didn't he already, didn't he put on that defense that he was on medications that could cause symptoms? He did, but he wasn't allowed to present the medical records, which also would have included other details about the underlying incident. For example, that he had clear speech, that there was no evidence that there was any smell of alcohol on his breath, that he wasn't drooling. I mean, all sorts of things that weren't present in the initial examination. Can I ask about the Edwards question? Sure. So the discipline, the imposition of discipline that led him, that kept him in prison for three extra weeks, that had the effect of increasing his overall sentence by three more weeks, right? A little bit more than three weeks. Yes. So, so he was on going to be on parole for three more weeks than he otherwise would be, right? That's not actually accurate. What happened is, is that he wasn't released on parole. This didn't change his overall sentence. He remained in custody for, for three and a half weeks longer than he would have. Precisely. I guess that's my question. So he remained in prison for three weeks longer than he would have, and he was put on parole. Right. At that point, does the parole start for the same duration it always would have? Or he, in effect, got three fewer weeks of parole. It was just swapped out for time in prison. Let me step back for a second. The way it works in New York State system is that you get a fixed sentence most of the time. But in this instance, a fixed sentence, and then it's chopped at a The total amount of time that you spend incarcerated plus parole remains the same. You get six years, it's going to be six years. Unless you get on parole early, but that's not an issue here. The question is, is then when do you shift from custody to parole? So the total amount of time always remains the same, and we're not challenging the total amount of time. So you're saying that his, his parole is ending on the same date that it would have ended, even if none of the discipline proceeding had ever happened. Correct. The issue here is... Your district court says that it increased the duration of his time in custody. The district court's just wrong about that. Yeah, yeah. It just... The district court was talking more about SHU, right? The district court was focused on extended additional time in the SHU, which presents a different issue from being in custody at all. Correct. The issue here is that if this, this hearing was the difference between my client walking out in daylight versus being in custody, full stop. We're not challenging the period of parole. We're not challenging the details of his parole. Well, is the comparison three weeks in the SHU versus three weeks on parole? Yeah, three weeks outside on parole. You know, not in custody, not in a prison. And that's a meaningful liberty difference. Can I ask a question that I think you may answer in your briefs, but I just want to make sure I understand correctly. Do you contend or do you believe that the due process shortfalls here necessarily imply the invalidity of the administrative finding? Yes. I mean, yes, I do believe that the underlying due process here, they did not give him the process necessary to make an adequate administrative finding here. Okay. And so what's your response then to the Article 78 argument that your client had a release? In order to bring an Article 78, you need a final action. That's one of the very first clauses in 7801 in the CPLR. He did not have a final determination. Once he comes out of custody, it's deemed final. Well, it's not deemed final. If there was a court case or a regulation or something that said that this is final, then maybe that would be a point. I mean, he should have gotten an answer in five days, and we were well past the five-day period, right? However, if you don't get an answer in time, and there's case law set in the brief, if you don't get an answer in time, that's not enough to be a final determination. You'd still go to court and get kicked out, and they'll tell you, no, you've got to wait for your final determination. So there wasn't a final determination here. They simply abandoned the process. As far as we can tell, he never got a piece of paper. It's interesting. They say that they'll tell you to wait for a final determination that everybody agrees will not be forthcoming. They don't tell him anything. That's the issue. They say that there's a four-month statute of limitations. The state will not be able to tell you when that statute of limitations starts running, I don't think, because there's no piece of paper. There's no determination. It's a bit like the habeas issue, where they just say, well, look, you're out. We don't deal with this anymore. You're out. We don't need to talk about your confinement. But you have the state right as against the disciplinary conclusions on your record. But that's not what we're challenging here. We're not saying, look, he's not worried about having a crystal clear record. He got his parole anyway. Well, I understand, but the logic is, you concede that your argument about the due process shortfalls necessarily implies the invalidity of the administrative finding. And therefore, we get Hecht's rule that you need those findings invalidated before you bring your 1983 action. Unless this falls into the very slim number of cases where you can't actually, there is no avenue to challenge it. And that's what we have here. There's simply no final determination. There's not a single court case. There's not a single regulation. There is nothing that says, OK, you're out. Now this is final. In fact, the attorney general's office, while this was going on in the case in 2022 in the third department, effectively lockstep with Leon Greathouse's case, is going to the third department and saying, actually, this is all moot. Now in truth, they lost that point. But the AG's office themselves are saying, no, once you're out, this is moot. You can't continue to have an article 78. And if you're thinking about whether or not there's a reasonable possibility, and reasonable is a word that actually the state adopts in the habeas context on this question, was there a reasonable opportunity for him? He would have had to work out from his jail cell an entirely novel theory. Why from his jail cell? Or shortly afterwards, right when he's getting out on parole. An entirely novel theory that no one else has ever pursued, saying that this was a final determination, and therefore I have to challenge it. He would be the first one. And I don't think when it comes to a reasonable opportunity, he needs to be the first one. OK, thank you very much, Mr. Rickner. You've reserved time for rebuttals. We'll hear from you again. Let's turn to the FLE, Mr. Hu. Thank you, Your Honor. Good morning, Your Honors. Kevin Hu on behalf of the defendants. So I should start out by saying my office filed a letter yesterday evening, in which we, after much consideration, we've concluded that under this panel's precedent, that habeas was not available to him. That's right, Your Honor. As a practical matter, it was not available. So it was not available to him because during the three-week period in which he had the additional incarceration, he could not have filed a petition. That's right, because he would first have to exhaust state remedies. Do you agree with the opposing counsel that the extra three weeks in prison did not increase his overall sentence? So he's still getting out on parole at the same time he would have gotten out on parole, even if the disciplinary proceeding had never happened. Is that accurate? Based on my limited understanding, I admit I did not independently research that issue. But in terms of the district court's rationale for concluding that the favorable termination will apply, the district court focused on this idea that when you are subject to community supervision or parole, you are still in custody for certain purposes. Right, you're still in custody. But if his claim is, I want to be put onto parole from prison, then obviously he's already on parole. So if he's not contesting the parole, then he wouldn't have that relief. But the district court also said, and I think it's in the earlier opinion, and maybe it's in the appendix, that when you revoke good time credits, the duration of the sentence overall is increased. And so my question was, if his parole actually is going to end three weeks later than it otherwise would have, maybe he could say, I should not be held on parole for those extra three weeks. But you're saying there was not an extra three weeks. That's right, Your Honor. And I believe this issue is sort of addressed in one of the footnotes in our brief. Good time credits ultimately would not have had any effect on Mr. Greathouse's term of incarceration, because good time credits are actually related to a completely separate form of release called conditional release. It basically accelerates the date in which you will be released as a matter of law. There's no discretion. And so in this case, returning good time credits to him would be functionally useless. Your argument is that he doesn't have to show favorable termination, but that he got all the process that was due to him. That's right, Your Honor. And so the liberty interest that is at the heart of his due process complaint is that he has a liberty interest in his release to parole. And we agree with him. That's what this court held in Victory v. Pataki. But the procedures that are attended to that liberty interest are then the rescission procedures that are provided by the Board of Parole. And this court, in that same case, recognized that those are robust procedural protections. They include, amongst other things, a prompt rescission hearing within a reasonable amount of time, advance and written notice of the charges against him, an opportunity to appear in person with counsel, and to cross-examine any witnesses. And plaintiff's own allegation— So he has alleged a number of facts, including that he was not intoxicated, that he—you know, I'm looking at the complaint— he wasn't able to meaningfully question his accuser, he was cut off when he attempted to ask foul questions, he wasn't able to call all of his witnesses. We have to assume that's all true for these purposes, don't we? We do, Your Honor. And if that's all true, you know, on a 12b-6, how do we not—is that a plausible claim? Your Honor, I'm going to try to address the specific issues identified in reverse order. So the first, as to the witnesses that he was supposedly unable to call, I believe he only identified two witnesses, and then the complaint actually indicates that both of those two same witnesses testified, and this inconsistency was called out by the district court in one of the two district court opinions. And so to the extent that he's now suggesting that there was that additional nurse witness, we don't believe that was properly alleged in the complaint. And as to the testimony— I mean, do we assume that he was not intoxicated for these purposes? He alleges he wasn't. He alleges he— He cites one nurse who concluded that maybe he wasn't intoxicated. Do we assume for purposes of this appeal that he was, in fact, not intoxicated? I believe because he—I believe under the 12b-6 standard, you— Yeah, but I think your answer would be it doesn't really matter whether he's intoxicated or not, because the question is whether he got too processed in the process of the proceeding. So it could be that the proceeding made a mistake, but that doesn't mean that he is definitely too processed. That's correct, Your Honor. So the sort of— Is that your argument? Yes, Your Honor. As the threshold matter under state law for a charge of intoxication, which can cover alcohol or intoxicants, the only non-alcohol intoxicant I'm aware of is synthetic marijuana. Does he allege in the complaint that the hearing officer was mistaken? I don't believe specifically, but I think when you consider— If he doesn't allege it, how can we make that assumption on an appeal from a 12b-6 motion? Apologies, Your Honor. If you're now arguing that maybe the hearing officer was simply wrong about whether he was intoxicated, is that drawing all reasonable inferences in favor of the plaintiff? Well, as a threshold matter, the plaintiff would still have to plead sufficient facts to demonstrate those procedural errors. But he has to be incorrect. He has a due process right not to be deprived of his good time credits absent some evidence, quote-unquote, some evidence in support of the charge. And your brief, I thought, was fairly conclusory on what the evidence was that makes it more likely that he was intoxicated than that he was suffering a medical episode. I take it that's what the some evidence has to go to, that it is ever so slightly more likely that this was intoxication than a medical problem. What was the evidence that makes it more likely one than the other? So in the cases that we cited on pages 28 and 31 of our brief, the state courts have explicitly held that personal observations and a medical assessment from a nurse are sufficient to sustain a charge of intoxication. But personal observation could be a personal observation that this person smelled like alcohol. It could be something that makes intoxication more likely than medical episode. But if the personal observation is of facts that don't distinguish one from the other, then how does that help you? So we know, too, so because we are in this procedural posture where we don't have the full administrative record before us, the two facts that we would point to are, first, that a plaintiff concedes that Sergeant Meadow observed him behaving erratically. And then he further concedes that Nurse Thompson performed... She took his vitals and performed a physical examination. And so based on her observations and his... So based on her initial assessment, as well as Sergeant Meadow's observations, those would form the basis of personal observations that could establish intoxication. But his pleading, again, if we're required to credit his pleadings on matters of factual assertion, he's asserting that all of that stuff is just as consistent with a medical episode of some sort as intoxication. And what basis do we have to say otherwise? Your Honor, you raise a good point. And because the allegations in the complaint do not include the entire administrative record, I'm ultimately unable to answer your question. And to the extent your honors have concerns, you can certainly send this back for further fact development. I thought you would have said that the nurse was made a judgment that in her experience that his behavior was consistent with intoxication and not something else. Is that not... You do not know that? Her entire testimony was not included in the complaint. And so it's difficult for me to pinpoint exactly what she said. But the state court cases have held that observations such as pupil dilation, what their pulse was, whether they smelled of alcohol, those are the sort of observations that can happen in a physical examination that can support a determination. And I suspect it is likely that she testified to those facts. But unfortunately, based on what we have in the complaint, it's not there. If the observations as to his behavior are consistent with intoxication or a medical episode, aren't we obliged to construe them in his favor at this point? Yes, your Honor. I believe so. Okay. I'm confused on the Article 78 issue. You're saying, fine, habeas was not available as a practical matter. Does that necessarily imply that the heck rule about favorable termination doesn't apply when you could have still gotten a favorable termination? In other words, are you abandoning your argument that he should have pursued the Article 78 remedy? For purposes of this appeal, we are not abandoning it to preserve potential for further review. But for purposes of this argument, functionally, yes. I should clarify. Your letter says you encourage us not to. Are you withdrawing the argument in this case? Not entirely, your Honor, to the extent that we might see it. Well, you're withdrawing it as applied to this case. You're preserving your right to argue in other cases. That's right. Is that fair? Yes. Thank you, your Honor. And I should emphasize, we still believe that Article 78 would have been available to the plaintiff. Well, do you know any law on this? So let's say we all agree that because he was in the shoe for the 24 days, he didn't really have the habeas option. As a matter of law, does that obviate the favorable termination rule of heck when the favorable termination is still available? Or do we just not have cases answering that question one way or the other? So there are two components to that, your Honor. The first is that the availability of a state remedy in which you could have sought the favorable termination doesn't seem to factor into any of the Supreme Court cases or this Court's precedents. All of those cases seem to focus on the availability of a federal forum. And so that would seem to take Article 78 out of the question, even though many of the policy concerns still seem to be implicated, which is why we made the argument to begin with. But the second issue is I suppose this Court has not directly said what it means for federal habeas to be unavailable. I think the last pronouncement seems to be the dueling concurrences in Teichman versus New York. And so we don't think there is clear circuit precedent that forecloses the argument, but it certainly seems to cast a— As a practical matter, it seems unlikely that if he had to petition for habeas before he was released from the SHU and onto parole, it would have been hard to do so. Exactly, which is what we're conceding in our letter. Can I go back to what you were saying about the merits now? So you are saying that it would have been permissible justification for the disciplinary sanction to rely on testimony from the nurse that said she did a physical exam and observed him and it was consistent with intoxication. But even though the complaint focuses on what she said at the disciplinary hearing, you're saying we can't look at the details of that until we reach a further stage of litigation. So there's a certain set of allegations that plaintiff makes that are in the fact section of his complaint, but ultimately when he then describes what she testified at the hearing, those same details do not then make a reappearance. So since you're now focused on this argument because you're not pursuing the Edwards argument, are you also now saying that it wasn't appropriate to resolve this case on a motion to dismiss? We are not, Your Honor. And so why is it appropriate? So the first element of a due process claim still is that liberty interest, and we respectfully suggest that the liberty interest was neither deprived and also... But you just said a moment ago that he does have a liberty interest in his release from incarceration to parole. He has, and he was able to fully vindicate that liberty interest through the rescission proceedings. He's arguing for procedural protections in the disciplinary proceeding that then gave rise... Oh, but did the disciplinary proceeding effectively delay his release from incarceration to parole? It did delay his... You're saying that delay doesn't implicate the interest in the liberty interest? Is that your argument? Our argument is that delay does not constitute a deprivation of the liberty interest. And so in Victory v. Pataki, this court recognized, yes, once you receive that open release date, you do have a liberty interest, but I'm unaware of any precedent that... So you're saying that if the prison had revoked his parole, it would implicate the liberty interest, but because they delayed it by three weeks, it doesn't even implicate the liberty interest. So that's right, Your Honor. And so we certainly agree that... So that means that the prison could arbitrarily keep him for an extra three weeks because he doesn't have any kind of interest in the three weeks, right? Maybe there'd be some other rule that would prevent him from doing that, I guess, but he wouldn't have a 1983 claim. Well, in the circumstances that you just proposed, I believe that he would still have a due process claim because then the procedures that led to the rescission... Okay, right. But then that means that your argument depends on the procedures. But you're telling me a moment ago that it might have been, and we don't know at this stage of litigation, whether he had the procedures because maybe there wasn't adequate testimony from the nurse and the other witnesses. So, Your Honor, there were actually two separate proceedings here. There was the underlying disciplinary proceeding relating to the intoxication charge, and then there was the separate rescission proceeding in which he was actually successful in convincing the board of parole not to rescind his parole. Now, the... Yeah, but these arguments focus on the disciplinary proceeding, right? That's right. And that's ultimately why there is a mismatch in this due process... You're saying the limby strip was only implicated in the rescission proceeding and not at all in the disciplinary proceeding. That's right, that's right. But the plaintiff cites Heard v. Fredberg, a Second Circuit case, for the proposition that even one day of unlawful incarceration, quote, qualifies as a harm of constitutional magnitude. And so why isn't three weeks in the shoe as compared to three weeks on parole a harm of constitutional magnitude for due process purposes? So, it is undisputed that the board of parole has the right to reconsider a grant of parole, and the board of parole is actually the only entity that has the ability to change those conditions. And the rescission procedures... But he had a release date pegged of January 4th, and he didn't get out until 21 or 24 days later. That's correct, Your Honor. And the rescission procedures actually contemplate that there may be instances where the board of parole properly exercises its discretion to reconsider, and ultimately probably does not receive that initial date. So, for example, the provision governing what happens when the board of parole concludes... It just means it's not the parole board's fault. But if this hearing officer revoked his good time credits and delayed his release and kept him in the shoe for another three weeks, that's a deprivation of his interest in release from incarceration to parole, isn't it? So, Your Honor, Plaintiff is not relying on the time that he spent in the shoe, and we respectfully suggest he'd be unable to... In prison as opposed to being on parole. So I didn't mean to put the emphasis on that either. That's right, Your Honor. So the disciplinary proceeding had the result that he's in prison for more than three weeks when he otherwise would be out on parole, right? That is correct, but then the only... So if the disciplinary proceeding was affected by a denial of due process, then it means that it deprived him of three weeks of his release from prison to parole. That is correct, but the determination as to what to do with that prisoner disciplinary determination is ultimately within the sole discretion of the board of parole. So there is a sort of a... You're saying the board of parole could have decided to ignore the disciplinary sanction and let him go on to parole. That's right. It could have actually decided not to even consider rescission at all. You just said a moment ago that it's just standard practice that when there's a disciplinary sanction, they put a hold on the parole and have a hearing later, right? That is an allegation in the complaint, but within the rescission procedures as set forth in the administrative regulations, it's completely discretionary. But then why didn't he get out on January 4th? Excuse me, Your Honor? Why wasn't he released on the initially projected release date? So the board of parole decided to proceed with a rescission hearing. He received the opportunity to participate and convince them not to do so at all. And so that's why his liberty interest ultimately was... He received all the process due to him to protect that liberty interest by appearing before the board of parole. And because he convinced them not to rescind his parole altogether, his liberty interest was fully protected. Okay. Thank you very much, Mr. Hu. We'll hear back from Mr. Richter. Just a handful of points, Your Honor. With respect to the rescission issue, really what this comes down to is that this wasn't worse, that he didn't spend more time. The sole reason that he was in custody was because of this disciplinary hearing. The sole reason that they triggered a rescission hearing  So we believe that's out of the question. I mean, if this had happened in the middle of his sentence such that it didn't have the effect of delaying his transfer from incarceration to parole, we wouldn't be talking about this, right? Because he would have spent three weeks internally. This just so happens that because the disciplinary hearing happened at the point he was scheduled to be released, suddenly it implicates a liberty interest, right? Yeah, that's it exactly. But you think that that's just the happenstance of the timing still means that he has a claim here, whereas he wouldn't have a claim under the other circumstances. Am I suspicious that he was targeted right before his release date? Nobody messes around three weeks, five weeks before his chance to get out. First time being intoxicated in prison. Am I suspicious? Of course, but that's not the allegation here. And yes, this is a unique situation. If this had happened in a different place in the proceeding, it would be different. But that's not what we have here. Now, with respect to Heck, I did some cursory research yesterday. It can be waived. It's not jurisdictional. According to case law in the Seventh Circuit and some others, I'm happy to provide a letter if you'd like. But the only reason I bring this up, and I'd be happy to just let him concede the argument, is that I have two hurdles on the way back to district court. And as much as I'd like this court to be able to simply ignore one of those hurdles as they requested would certainly be nice. We do have to address it. And I'm just saying, I do believe waiver is available for them. They seem to be saying it without saying it. So that's a solution to one of the hurdles. And the last point I'd like to make is really paragraph 33 of the complaint. Nurse Thompson's testimony was four words. Yes. Four times. Agreeing to a confined set of leading questions reconstituted by the hearing officer, Drake. So all of the details that we've been talking about- Are those questions and answers in the record or not on the record? We summarized them. Paragraph 33, a handful of leading questions without going into the details that my client wanted. What made you think they were intoxicated? They weren't part of the hearing. These four yeses, that was it. That was her testimony. That's why we say that it doesn't even meet the minimum standard necessary of some reliable evidence. Well, why is that enough? So the complaint does say that she was asked if her experience gives her the ability to make determinations about a person's health. And if she was able to make a determination of intoxication without blood or urinalysis testing. And the nurse responded, yes. So if the hearing officer says, I believe this is somebody who has the medical experience to make a determination about a person's health and she was able to make a determination of intoxication, wouldn't that be evidence on which a hearing officer could rely? No, I don't think that means there's some reliable evidence standard. There isn't even a bare statement as to how she came to that conclusion. If the word is conclusory, that's a conclusion. And when we're worried about an arbitrary proceeding, an arbitrary proceeding is one that accepts a purely conclusory statement like this without even the smallest amount of probing into the underlying facts that would allow you to come to that conclusion. But it's not conclusory because the question is, are you able to make this kind of determination? And then did you, in fact, make the determination, right? So the idea is she has the experience to make these kinds of evaluations and that she did. But based on what? I mean, I think that you need the smallest amount of analysis, of underlying factual material that brings you to that point. Because otherwise, every prison disciplinary hearing could simply be somebody, do you come to this conclusion? Yes. Do you have experience in this? Yes. OK, we're done. That effectively eliminates any kind of procedural protections you'd have in prison discipline. So what should it look like instead? Oh, please tell me the specific factors that you look at. What did you observe of this person? What intoxicants do you believe that they were on? What part of your experience leads you to come to this conclusion? I'm not saying that you need a full Daubert hearing, but you need something, something more than I have come to this determination and therefore that's it. Because that's all that's in the record regarding my client's intoxication. OK, thank you very much. Thank you, Your Honor. Mr. Rickner, the case is submitted. I appreciate that. Thank you.